```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAVI BALU, et al.                :    CIVIL ACTION
                                 :
     V.                          :
                                 :
THE CINCINNATI INSURANCE         :
COMPANY                          :    NO. 19-3604
```

MEMORANDUM

Bartle, J.                                        April 13, 2021

      Insureds Ravi and Raji Balu bring this breach of contract action against their homeowner's insurance carrier, The Cincinnati Insurance Company ("Cincinnati"), for denying a $124,772 claim for water damage to the roof and ceiling of their home.  Before the court is the Motion in Limine of Cincinnati to Limit Plaintiffs' Damages under Rule 401, Rule 402, and Rule 403 of the Federal Rules of Evidence.  Discovery in this matter closed on November 29, 2019.  Trial has been repeatedly continued as a consequence of the coronavirus pandemic but is now scheduled to take place in several weeks.

I

      A "motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990).  Under Rule 401, evidence that is not relevant may not be admitted at trial.  Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 402 (emphasis added). Even where evidence is deemed relevant under Rule 402, the court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This court has "broad discretion to exclude collateral matters that are likely to confuse the issues." United States v. Casoni, 950 F.2d 893, 919 (3d Cir. 1991).

II

Cincinnati issued a homeowner's insurance policy to plaintiffs which covered their home located in Murrysville, Pennsylvania. In 2016, they discovered water damage to the roof above their pool room and dining room as well as to the interior walls and ceiling of their pool room. They submitted a claim to Cincinnati to cover the water damage under their homeowner's insurance policy.

Cincinnati retained forensic engineer Scott E. Wasson to investigate the cause of the water damage. After examining the damage, Wasson determined it was caused by the improper construction of plaintiffs' roof. Specifically, he identified improper sealing of the skylights and plumbing and fireplace

-2-

vents above plaintiffs' pool room, as well as an inadequate slope in the pool room roof.  Based on these findings, Cincinnati partially denied plaintiffs' 2016 claim under a policy exclusion for "faulty, inadequate or defective . . . design, specifications, workmanship, repair, construction, renovation, remolding, grading, compaction; . . ."

Plaintiffs repaired the interior of their pool room but did not repair their roof.  They filed a second claim with Cincinnati after they discovered water damage to the ceiling and roof above their pool room again in 2018.  To help with the second claim, they engaged insurance adjuster Jason J. Cortazzo.  He assessed the damage and drafted a detailed report in which he concluded that "[d]irect physical damage from wind, snow, and ice will require the roofing system to be replaced."  He estimated that the total cost to do so would be $124,772 and identified the "Type of Loss" as "Weight of Ice & Snow."  Cincinnati sent Wasson to plaintiffs' home a second time.  He found the same cause of loss as he had previously found — improper sealing and inadequate roof slope.  This time Cincinnati denied plaintiffs' claim in its entirety under the policy exclusion for faulty workmanship.

Plaintiffs alleged in the complaint that the water damage was "the result of a peril insured against under the Policy, . . . to the extent set forth in the preliminary

-3-

estimate of loss." They attached to the complaint the $124,772 repair estimate of Cortazzo, which they relied on to support their claim for damages.

Plaintiffs' homeowner's insurance policy expressly limited coverage to the lesser of the "replacement cost of the building or any of its parts" or "[t]he amount actually and necessarily spent to repair or replace the building." Plaintiffs do not dispute that coverage under the policy is limited to the actual and necessary cost of repair. On November 15, 2019 Ravi Balu testified at his deposition that the repairs identified in Cortazzo's estimate were completed by his contractor, Franciosi Construction, in September of 2019. Dr. Balu also testified that the total cost of the repairs was $67,800. Upon further questioning, he confirmed that there were no outstanding repairs that needed to be completed. Dr. Balu further testified he was not sure why he and his wife were alleging an amount of damages that reflected Cortazzo's $124,772 repair estimate rather than the $67,800 they paid to Franciosi Construction.

On May 11, 2020, some five months after the close of discovery, Dr. Balu submitted an undated affidavit in support of plaintiffs' response in opposition to defendant's motion in limine. In the affidavit he changed his November 15, 2019 testimony. He stated in the affidavit:

10. At my deposition, I was asked if there were any outstanding repairs that needed to be made to property and I responded that no other repairs needed to be to made.

11. At the time, it was my understanding that the repairs to my property were complete because the interior of my pool room was fixed and the portion of the roof directly above the leak in my pool room was fixed and has not leaked since.

12. I was unaware that Mr. Cortazzo's estimate included damage to other areas of my roof and that Franciosi Construction did not repair those other areas.

13. The only area of the roof that was repaired by Franciosi Construction is the area I circled on **Exbibit 1**.

14. The areas of the roof not directly above the leak in the pool room that are identified in the engineering report of Joseph F. Broward, P.E., F.NSPE have not been repaired. A true and correct copy of Mr. Broward's engineering report is attached hereto as **Exhibit 2**.[1]

15. The areas of the roof that are not directly above the leak in the pool room and are included in Mr. Cortazzo's estimate have not been repaired. A true and correct copy of Mr. Cortazzo's estimate is attached hereto as **Exhibit 3.**

---

1.       Joseph F. Boward's engineering report, which is dated January 14, 2019, discusses his findings as to the cause of the water damage to plaintiffs' pool room roof and ceiling. Boward does not provide a repair estimate nor is his report evidence of what was not repaired by Franciosi Construction in the summer of 2019.

-5-

III

Cincinnati moves to prevent plaintiffs from presenting at trial evidence of any damages in excess of the $67,800 that Dr. Balu testified he paid to Franciosi Construction to complete the repairs. Cincinnati argues that because the policy language limits coverage to the actual and necessary cost of repair, damages in excess of $67,800 are not recoverable. Therefore, any evidence of damages in excess of $67,800 would be inadmissible as irrelevant evidence under Rule 401 and Rule 402 of the Federal Rules of Evidence. Cincinnati seeks to have the court reject Dr. Balu's affidavit (and any evidence consistent with the affidavit) under the sham affidavit doctrine.

Under that doctrine, a party cannot create a genuine dispute of material fact for the jury to consider by submitting an affidavit to contradict or change that party's earlier deposition testimony. As our Court of Appeals has noted, affidavits, unlike deposition testimony, are usually drafted by lawyers. Only under the rare circumstance where the party satisfactorily explains the change will the affidavit be permitted. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251-55 (3d Cir. 2007). While usually the sham affidavit doctrine is applied in the summary judgment context, this court sees no reason why the doctrine should not apply here where the plaintiffs seek to use an affidavit to oppose a motion in limine

to preclude plaintiffs from presenting certain damage evidence to the jury.

Dr. Balu stated in his belated affidavit that some repairs listed in Cortazzo's estimate were not completed at the time of his November 15, 2019 deposition. Unfortunately for Dr. Balu, he offers no satisfactory explanation why he has changed his testimony. Moreover, Dr. Balu had the opportunity pursuant to Rule 30(e) of the Federal Rules of Civil Procedure to amend his testimony within 30 days after the transcript of his deposition became available. He failed to do so.

Additionally, Dr. Balu's reference in his affidavit to the report of engineer Joseph F. Boward does not support his assertion that repairs of the water damage were not completed at the time of his deposition. As noted above, Boward's report details his findings as to the cause of the water damage. It does not provide a repair estimate nor is it evidence of what was or was not repaired several months later. The court rejects Dr. Balu's affidavit as a sham in accordance with the reasoning of our Court of Appeals in <u>Jiminez</u>. As a result, any damage evidence at trial will be limited to what he stated in his deposition.

Even if we were to accept Dr. Balu's affidavit as an untimely amendment to his deposition testimony, the unfair prejudice to Cincinnati if this Court were to admit evidence of

-8-

damages in excess of what Dr. Balu disclosed during discovery substantially outweighs any probative value.  Discovery closed many months ago, and the trial in this matter is scheduled to take place within several weeks.  Cincinnati would have been alerted to the need to discover necessary repairs not completed by Franciosi Construction had Dr. Balu testified about them.  Without this discovery, Cincinnati is not in a position to defend against a claim for damages in excess of the $67,800 Dr. Balu paid Franciosi Construction to repair the water damage.

The court will grant the Motion in Limine of Cincinnati Insurance Company to Limit Plaintiffs' Damages.  Plaintiffs will not be permitted to introduce evidence of damages at trial in excess of $67,800.