```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RAVI BALU, et al.                  :      CIVIL ACTION
                                   :
     V.                            :
                                   :
THE CINCINNATI INSURANCE           :
COMPANY                            :      NO. 19-3604
```

<u>MEMORANDUM</u>

Bartle, J.                                        April 15, 2021

       Insureds Ravi and Raji Balu bring this breach of contract action against their homeowner's insurance carrier, The Cincinnati Insurance Company ("Cincinnati"), for denying a claim for water damage to the roof and ceiling of their home. Before the court is the Motion in Limine of Cincinnati to Preclude the Witness Testimony of Jason Cortazzo as inadmissible expert testimony under Rule 702 of the Federal Rules of Evidence.[1] Trial has been repeatedly continued as a consequence of the coronavirus pandemic but is now scheduled to take place in several weeks.

---

1.     The Court precluded plaintiffs from introducing evidence of damages in excess of the amount they actually paid to repair the water damage. Consequently, plaintiffs may not introduce a $124,772 repair estimate prepared by Cortazzo for the purpose of claiming damages above $67,800. Cincinnati now moves to preclude the estimate and any expert testimony of Cortazzo as evidence of causation.

I

Cincinnati issued a homeowner's insurance policy to plaintiffs which covered their home located in Murrysville, Pennsylvania.  In 2016, they discovered water damage to the roof above their pool room and dining room as well as to the interior walls and ceiling of their pool room.  They submitted a claim to Cincinnati to cover the water damage under their homeowner's insurance policy.

Cincinnati retained forensic engineer Scott E. Wasson to investigate the cause of the water damage.  After examining the damage, Wasson determined it was caused by the improper construction of plaintiffs' roof.  Specifically, he identified improper sealing of the skylights and plumbing and fireplace vents above plaintiffs' pool room, as well as an inadequate slope in the pool room roof.  Based on these findings, Cincinnati partially denied plaintiffs' 2016 claim under a policy exclusion for "faulty, inadequate or defective . . . design, specifications, workmanship, repair, construction, renovation, remolding, grading, compaction; . . . ."

Plaintiffs repaired the interior of their pool room but did not repair the roof.  They discovered water damage to the ceiling and roof above their pool room again in 2018.  They engaged insurance adjuster Jason J. Cortazzo to help with a second claim.  Cincinnati had Wasson inspect plaintiffs' pool

room roof and ceiling a second time. Wasson was accompanied by Cortazzo on this visit. Wasson found the same cause of loss as he had previously found — improper sealing and inadequate roof slope. Contrary to Wasson's findings, Cortazzo noted in his repair estimate that the damage was due to "[d]irect physical damage from wind, snow, and ice." Cortazzo identified the "Type of Loss" as "Weight of Ice & Snow." Relying on Wasson's findings, Cincinnati denied plaintiffs' second claim in its entirety under the same policy exclusion for faulty workmanship.

Cortazzo engaged an engineer, Joseph F. Boward, on behalf of plaintiffs to perform a second inspection. Boward summarized the result of his inspection in an engineering report dated January 14, 2019. He observed cracks running the length of several shingles on plaintiffs' pool room roof. Many of the shingles were also displaced. Boward concluded that wind caused the shingles to fold upward and crack. This impaired the ability of the shingles to hold back water. He also observed depressed and soft decking subjacent to the edges of the skylights in the pool room roof. According to Boward, the damage to the decking was caused by ice which "uplifted and distressed the flashing about the skylights." He determined the cause of the water damage to plaintiffs' pool room roof and interior to be water infiltration resulting from the damaged shingles and decking.

Plaintiffs identify both Cortazzo and Boward as witnesses who will testify at trial on the "cause and scope of loss." Cincinnati seeks to preclude Cortazzo from offering expert testimony as to the cause of the water damage.

Cortazzo is a senior claims adjuster and HAAG Certified Roof Inspector employed by Metro Public Adjustment, Inc. since 2005. As a claims adjuster, Cortazzo submits insurance claims on behalf of property owners, prepares claim estimates, negotiates settlements, and hires, trains, and manages new hires. Cortazzo has a bachelor's degree in business administration. There is no evidence that he is or has any experience as a structural engineer.

II

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is <u>qualified</u> as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

>    (d) the expert has reliably applied the
>    principles and methods to the facts of the
>    case.

(emphasis added). This Court has the role of "gatekeeper" in connection with the admission of expert testimony. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993).

Rule 702 has "three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008) (emphasis added). Our Court of Appeals has explained these three requirements embody "a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Est. of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

The party seeking to introduce expert testimony has the burden to show by a preponderance of the evidence that the three requirements for the admissibility of expert testimony under Rule 702 are met. See In re Paoli R.R. Yard Pcb Litig., 35 F.3d 717, 744 (3d Cir. 1994).

### III

To meet the qualification requirement under Rule 702, the witness must possess "specialized expertise." Schneider,

320 F.3d at 404. This requirement is interpreted liberally as "a broad range of knowledge, skills, and training qualify an expert." Id. Nonetheless, an expert wishing to testify as to a cause of damage must have expertise on causation as it relates to the relevant subject matter. See Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114 (3d Cir. 1987).

The present circumstances are strikingly similar to those in Aloe Coal. In that case, Aloe Coal, a strip mine operator, brought an action for damages against the manufacturer of a tractor shovel which caught fire. The district court allowed Aloe Coal to admit the expert testimony of a sales representative in the tractor equipment industry as to the cause of the fire. Similar to Cortazzo, the sales representative's position often required him to determine the cost of repairing or replacing damaged equipment.

Our Court of Appeals reversed the district court's decision to permit the sales representative's testimony as to the issue of causation:

> We are well aware of the liberal policy of permitting expert testimony which will probably aid the trier of fact. . . . But, at a minimum, <u>a proffered expert witness on causation must possess skill or knowledge greater than the average layman in determining causation.</u> Drewnoski did not. We therefore conclude that the district court abused its discretion in allowing him to testify as an expert on the cause of the tractor shovel fire.

See Aloe Coal, 816 F.2d at 114 (emphasis added).

As discussed above, Cortazzo is a senior claims adjuster and HAAG Certified Roof Inspector.  He is no doubt capable at expertly identifying roof damage and the cost to repair it.  However, as our Court of Appeals stated in Aloe Coal, expertise at identifying and estimating the cost to repair damage is not expertise at identifying the cause of the damage.  Cortazzo is not an engineer.  Plaintiffs have not provided any evidence that he has any expertise by education or experience in opining on the cause of water damage to plaintiffs' pool room roof and interior.  See In re Paoli, 35 F.3d at 744.

Accordingly, the court will grant the Motion in Limine of Cincinnati Insurance Company to Preclude the Witness Testimony of Jason Cortazzo.  Plaintiffs will not be permitted to introduce his estimate or his testimony as evidence of the cause of the water damage to plaintiffs' home.